**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARNOLD RANDALL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIAN REYNOLDS,** | : | |
| **REGINALD GRAHAM and** | : | |
| **CITY OF PHILADELPHIA** | : | **NO.  04-1081** |

**NORMA L. SHAPIRO, S.J.**                                    **SEPTEMBER 25, 2006**

## MEMORANDUM and ORDER

This is a civil rights action under 42 U.S.C. § 1983.  Plaintiff, Arnold Randall, alleged constitutional torts of false arrest and malicious prosecution against the police officer defendants, Brian Reynolds and Reginald Graham, under the Fourth and Fourteenth Amendments to the United States Constitution.  Plaintiff also alleged a Monell claim against the City of Philadelphia for its alleged policies and practices tolerating the abuse of police powers.  See Monell v. Department of Social Services., 436 U.S. 658 (1978).

After the close of discovery, the City filed a motion for summary judgment and plaintiff cross-moved for summary judgment.  Both motions were denied in light of genuine issues of material fact.  The police officer defendants did not move for summary judgment on the basis of qualified immunity.  The action proceeded to trial in separate phases.  The false arrest and malicious prosecution claims against Reynolds and Graham were tried first.  The jury returned a verdict for Graham on both claims, for Reynolds on the false arrest claim,[1] and for plaintiff on

---

[1]      For liability, the verdict slip required the jury to answer two interrogatories for each count as to each police officer defendant: (1) was plaintiff arrested/prosecuted without probable cause? and (2) did the false arrest/malicious prosecution cause the alleged injuries?  For the false arrest count as to Reynolds, the jury answered "yes" to the first question and "no" to the second.

the malicious prosecution claim against Reynolds in the amount of $8,000.  The Monell claim

was tried next and the jury found for the City.

Approximately two weeks after the jury reached its decision in the first phase of the trial,

Reynolds filed a memorandum entitled "Proposed Findings of Fact and Conclusions of Law of

Defendant Philadelphia Police Officer Brian Reynolds on Issue of Qualified Immunity."

Although captioned differently, Reynolds's memorandum appears substantively identical to a

motion for judgment as a matter of law on the basis of qualified immunity.  Counsel for

Reynolds argued his basis for seeking qualified immunity for the first time at the conclusion of

trial was proper because factual evidence crucial to qualified immunity had been disputed or

unknown prior to trial.  Plaintiff's counsel claimed that Reynolds had waived his right to seek

qualified immunity, but plaintiff never submitted a written opposition.

The court withheld judgment and placed this action in suspense pending the disposition

of several related actions.[2]  The court now finds Reynolds immune from suit on the malicious

prosecution claim by reason of his qualified immunity.  Plaintiff has not shown a constitutional

violation; therefore, Reynolds is entitled to qualified immunity under step one of the two-part test

required by Saucier v. Katz, 533 U.S. 194, 201 (2001).

---

[2]      Those actions are Brian Randall v. Reynolds, et al., C.A. 04-3983, Juanita Randall
v. Reynolds, et al., C.A. 04-5392, Coulter v. Reynolds, et al., C.A. 04-4924, and Parker v.
Reynolds, et al., C.A. 04-6064.

I.     **Factual Background**[3]

On June 11, 2003, around 6:00 p.m., plaintiff was sitting on the front porch of his home at 614 North Union Street, Philadelphia. 6/27/05 Trial Tr. (Arnold Randall) at 129-130; Pl.'s Trial Ex. 1 (police investigation report) at 1. Plaintiff observed several plainclothes police officers from Philadelphia Narcotics Field Unit South ("NFU-South") enter his sister's house at 610 North Union Street. 6/27/05 Trial Tr. at 130-31; Pl.'s Trial Ex. 2 (police arrest report) at 1. About a half-hour later, officers from NFU-South came to plaintiff's house with a search warrant.[4] 6/27/05 Trial Tr. at 131. The officers entered plaintiff's house and directed him and other family members to go to the living room, where everyone except plaintiff's elderly mother was handcuffed and directed to sit down.[5] Id. at 132-34; see also id. at 167 (Juanita Randall).

For the next 15 to 20 minutes, members of NFU-South searched the second floor of plaintiff's house. Id. at 135. The officers, including Graham, came downstairs carrying several items confiscated from plaintiff's bedroom, including plaintiff's birth certificate, a plate with crack cocaine residue, a glass crack pipe, several new and unused vials, and a box of firearm

---

[3]     This factual summary is compiled from plaintiff's case-in-chief at the trial's first phase since there was a jury verdict partially in his favor.

[4]     Officer Reynolds's affidavit of probable cause in support of the search and seizure warrant details surveillance observations allegedly made by members of NFU-South, including observations that several members of the Randall family engaged in narcotics transactions at or near the 600 block of North Union Street in the days prior to the police raid. See Pl.'s Trial Ex. 1. The affidavit of probable cause does not mention Arnold Randall by name, and most of the allegedly observed drug activity involved houses other than 614 North Union Street. Id.

[5]     It is unclear from plaintiff's trial testimony whether Reynolds, Graham or some other officer physically arrested plaintiff. Plaintiff's arrest report was prepared by Reynolds (Pl.'s Trial Ex. 2 at 2) and state court records show Reynolds as the arresting officer (Pl.'s Trial Ex. 9 at 1). In separate interrogatories, the jury concluded Reynolds had arrested plaintiff without probable cause, but also concluded the arrest did not cause plaintiff's alleged injuries.

ammunition.  Id. at 136-39; 6/28/05 Trial Tr. at 157 (Reginald Graham); see also Pl.'s Trial Exs.

5, 6 and 7 (receipts of evidence seized at 614 N. Union St.).  During direct examination, plaintiff

admitted that he "smoked crack for a couple years," had used crack prior to his arrest, and had

previously used the confiscated plate and glass pipe for personal consumption of crack.[6]  6/27/05

Trial Tr. at 139; see also id. at 151-52.  When asked, "[a]nd that [the glass pipe] is to smoke

crack cocaine?," plaintiff answered, "[y]es, it is."  Id. at 139.

    Plaintiff was taken into custody and transported to police headquarters at Eighth and Race

Street where he was charged with various narcotic and weapons charges.  Id. at 140-45.  The

district attorney adopted four of the six charges recommended by Reynolds in the police

department arrest report, and also added three other charges.  See Pl.'s Trial Ex. 2 (police arrest

report) at 2; Pl.'s Trial Ex. 8 (state court criminal complaint) at 1.  Plaintiff was not able to make

bail, originally set at $45,000.  6/27/05 Trial Tr. at 160 (Arnold Randall).  Plaintiff was

transferred from police headquarters to the Curran-Fromhold Correctional Facility ("CFCF") in

Philadelphia and was held there for approximately a month.  Id. at 147-48.  He was then

transferred to the Philadelphia Detention Center where he was detained for approximately six

months.  Id. at 148.  While in custody at the Detention Center, plaintiff was transported to court

on three different occasions for status hearings, none of which were attended by Officer Reynolds

or Officer Graham.  Id. at 148-49.  Plaintiff was released from prison on December 30, 2003 after

the officers failed to appear at a hearing on that date.  Id. at 148-49.  Plaintiff's criminal case had

---

[6]     On direct examination from plaintiff's counsel, Officer Graham testified that he
had not personally confiscated a glass crack pipe from Arnold Randall's bedroom.  6/28/05 Trial
Tr. at 158.  Graham did not mention whether another officer might have confiscated plaintiff's
pipe.

been marked "must be tried," or "MBT," and it was "discharged for lack of prosecution," i.e., *nolle prosequi*, after the officers failed to appear at the December 30th hearing.  6/28/05 Trial Tr. at 67-68.

As a result of his incarceration, plaintiff lost his job as an elementary school custodian, where he had been earning approximately $17,000 per year.  6/27/05 Trial Tr. at 129 and 150.

## II.    Discussion

Before addressing the merits of Reynolds's memorandum on qualified immunity, the court must decide: (1) whether Reynolds waived his right to seek judgment on the basis of qualified immunity by moving on that issue for the first time at the conclusion of trial;[7] and (2) whether to consider Reynolds's memorandum pursuant to Rule 49 (special verdicts and interrogatories), Rule 50 (judgment as a matter of law in jury trials) or Rule 52 (findings by court) of the Federal Rules of Civil Procedure.

### A.    Waiver

Reynolds did not move for summary judgment on the basis of qualified immunity at the conclusion of discovery.  Plaintiff's claims proceeded to trial in two separate phases.  The false arrest and malicious prosecution claims against Officer Reynolds and Officer Graham were tried first.  At the close of evidence at the trial's first phase, counsel for the police officers orally moved for judgment as a matter of law pursuant to Rule 50(a).  6/29/05 Trial Tr. at 198.  The court orally denied the motion without prejudice to a renewed motion after the jury returned its verdict.  Id.  The court prepared jury interrogatories and submitted the verdict slip without

---

[7]    Reynolds had previously asserted qualified immunity as an affirmative defense. Answer at 10.

objection from counsel.  6/30/05 Trial Tr. at 3.  The jury returned its verdict as follows:

1.  Did Arnold Randall prove, by a preponderance of the evidence, that either of the defendants listed below arrested him without probable cause in violation of the Fourth Amendment?

    Brian Reynolds        Yes ___X___          No _____
    Reginald Graham       Yes _____          No ___X____

2.  Did Arnold Randall prove, by a preponderance of the evidence, that the conduct of either of the defendants listed below was a cause of the injuries he claims to have suffered as a result of being arrested without probable cause in violation of the Fourth Amendment?

    Brian Reynolds        Yes _____          No ___X____
    Reginald Graham       Yes _____          No ___X____

3.  What amount of money, if any, in accordance with the Court's instructions, will reasonably compensate Arnold Randall for the injuries he suffered as a result of his being arrested without probable cause in violation of the Fourth Amendment?

                                              $ _____

4.  Did Arnold Randall prove, by a preponderance of the evidence, that either of the defendants listed below initiated prosecution against him without probable cause in violation of the Fourth Amendment?

    Brian Reynolds        Yes ___X___          No _____
    Reginald Graham       Yes _____          No ___X____

5.  Did Arnold Randall prove, by a preponderance of the evidence, that the conduct of either of the defendants listed below was a cause of any injuries that he claims to have suffered as a result of prosecution being initiated against him without probable cause?

    Brian Reynolds        Yes ___X___          No _____
    Reginald Graham       Yes _____          No ___X____

6.  What amount of money, if any, in accordance with the Court's instructions, will reasonably compensate Arnold Randall for the injuries he suffered as a result of being prosecuted without probable cause in violation of the Fourth Amendment?

                                              $ _____8,000_____

6/30/05 Trial Tr. at 63-66.  After the jury verdict, Reynolds filed "Proposed Findings of Fact and

Conclusions of Law of Defendant Philadelphia Police Officer Brian Reynolds on Issue of

Qualified Immunity."  Although purportedly pursuant to Rule 52, Reynolds's memorandum is

substantively similar to a renewed motion for judgment as a matter of law under Rule 50.

At oral argument post-trial, counsel for Reynolds argued that it was proper to seek

judgment on the basis of qualified immunity for the first time at the conclusion of trial because

factual evidence crucial to qualified immunity had been disputed or unknown prior to trial.

7/22/05 Hearing Tr. at 4-5.[8]  Counsel for Reynolds insisted that his memorandum was not a

motion for judgment as a matter of law under Rule 50, but a request for findings of fact and

conclusions of law on the issue of qualified immunity under Rule 52.  Id. at 9.  Counsel argued it

was proper to submit proposed findings of fact and conclusions of law on qualified immunity

after the jury returned its verdict because the immunity issue remained to be decided by the court.

Id. at 10.  Counsel pointed out that the court had rejected defense counsel's proposed jury charge

and would not submit the question of qualified immunity to the jury.  Id.; 6/30/05 Jury Charge.

Plaintiff's counsel argued in opposition that Reynolds had waived his right to assert qualified

immunity by waiting until the conclusion of trial, but counsel failed to demonstrate any prejudice

caused by the delay.  Id. at 33-35.

---

[8]        As qualified immunity is "an entitlement not to stand trial or face the other
burdens of litigation," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), "a ruling on that issue
should be made early in the proceedings."  Saucier v. Katz, 533 U.S. 194, 200 (2001); see also
Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (qualified immunity is effectively lost if a case
is erroneously permitted to proceed to trial).  But there is a tension between ruling on qualified
immunity early in the proceedings and refraining from granting summary judgment when
material facts remain in dispute.  See, e.g., Grant v. Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996).
A ruling on qualified immunity "will be premature where there are unresolved disputes of
historical fact relevant to the immunity analysis."  Curley, 298 F.3d at 278.

Qualified immunity is an issue to be resolved by the court with or without the assistance of the jury, depending on the nature and extent of disputed facts.  See Curley v. Klem, 298 F.3d 271, 278-79 (3d Cir. 2002).  In this action, disputed facts relevant to qualified immunity – particularly those relating to the timing of plaintiff's arrest and evidence confiscated from plaintiff's home – precluded a ruling on qualified immunity prior to trial.  Id. at 278 (a ruling on qualified immunity is "premature where there are unresolved disputes of historical fact relevant to the immunity analysis").  The facts relevant to qualified immunity are no longer in dispute in light of plaintiff's testimony at trial.  Reynolds did not waive the defense of qualified immunity and we address that issue pursuant to Rule 52.[9]

### B.  Qualified Immunity

Government officials performing discretionary functions are shielded from liability for damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Sharrar v.

---

[9]        Reynolds's memorandum could also be treated as a renewed motion for judgment as a matter of law under Rule 50(b) because: (1) Reynolds moved for judgment as a matter of law before the case was submitted to the jury; and (2) qualified immunity is a legal question capable of resolution by the court if the relevant facts are not in dispute.  In this action, the relevant facts were admitted by plaintiff at trial.  It might have been better had Reynolds moved for judgment under Rule 50(b) rather than submitted proposed findings of fact and conclusions of law under Rule 52, but the difference is procedural, not substantive.

        Reynolds's memorandum might also be treated as a request pursuant to Rule 49.  Although the court did not require the jury to answer factual interrogatories relevant to qualified immunity, the court did employ a verdict slip with specific interrogatories.  "If a case is submitted to a jury on a special verdict under Rule 49(a), and the issues put to the jury are not sufficient to cover all of the issues in the case, the parties, by failing to object, waive a jury trial on the unsubmitted issues.  As a result, the court must make findings under Rule 52 on those issues."  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2574 (2d ed. 2006).

Felsing, 128 F.3d 810, 826 (3d Cir. 1997); see also Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982).  It is the defendants' burden to establish that they are entitled to qualified immunity.

Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

       Determining whether a police officer is protected by qualified immunity requires a two-

step analysis.  First, the court must determine whether the facts, taken in the light most favorable

to plaintiff, show that the officer's conduct violated a constitutional right.  Saucier v. Katz, 533

U.S. 194, 201 (2001); In re City of Phila. Litigation, 49 F.3d 945, 961 (3d Cir. 1995).  If no

constitutional right was violated, the officer is entitled to immunity.  Saucier, 533 U.S. at 201;

see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001).  However, if there has been a

constitutional violation, "the next, sequential step is to ask whether the right was clearly

established," *i.e.*, "whether it would be clear to a reasonable officer that his conduct was unlawful

in the situation he confronted."  Saucier, 533 U.S. at 201; see also Kornegay v. Cottingham, 120

F.3d 392, 395-96 (3d Cir. 1997).  Qualified immunity protects "all but the plainly incompetent or

those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

       To prevail in a § 1983 action, a plaintiff must establish that a state actor, acting under the

color of state law, engaged in conduct depriving him of a constitutional right.  42 U.S.C. § 1983;

Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Plaintiff's malicious prosecution claim is

brought under the United States Constitution.  See Compl. ¶¶ 30, 37 and 39 (citing the Fourth

and Fourteenth Amendments and alleging, *inter alia*, violations of plaintiff's "due process"

rights).  After Albright v. Oliver, 510 U.S. 266 (1994), a § 1983 claim for malicious prosecution

can no longer be brought under the Fourteenth Amendment as a violation of plaintiff's

*substantive* due process rights.  Id. at 272.  A malicious prosecution claim under § 1983 must be

based on a provision of the Bill of Rights providing an "explicit textual source of constitutional protection." <u>Id.</u> at 273.  Some circuit courts have concluded that, after <u>Albright</u>, § 1983 malicious prosecution claims are capable of being brought *only* under the Fourth Amendment. <u>See, e.g.</u> <u>Uboh v. Reno</u>, 141 F.3d 1000 (11th Cir. 1998); <u>Murphy v. Lynn</u>, 118 F.3d 938 (2d Cir. 1997); <u>Taylor v. Waters</u>, 81 F.3d 429 (4th Cir. 1996).  Our Court of Appeals, however, has concluded that <u>Albright</u> permits § 1983 malicious prosecution claims to be brought under the Fourth Amendment as well as "the *procedural* due process clause or other explicit text of the Constitution." <u>Torres v. McLaughlin</u>, 163 F.3d 169, 173 (3d Cir. 1998) (emphasis added). Because the law is unclear how a plaintiff would proceed on a malicious prosecution claim under the procedural due process clause of the Fourteenth Amendment, and because plaintiff's complaint does not specifically aver a violation of procedural due process rights, the court considers plaintiff's malicious prosecution claim as one brought under the Fourth Amendment.[10]

A plaintiff asserting a § 1983 malicious prosecution claim under the Fourth Amendment must show "some deprivation of liberty consistent with the concept of 'seizure'" as a consequence of a legal proceeding.  <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998).  In addition to a "seizure," plaintiff must show:

    (1) the defendants initiated a criminal proceeding;

    (2) the criminal proceeding ended in plaintiff's favor;

    (3) the proceeding was initiated without probable cause; [and]

---

[10]    All of our Court of Appeals's post-<u>Albright</u> precedential opinions addressing § 1983 malicious prosecution claims of which the court is aware were under the Fourth Amendment.  The existing case law sets forth no guidance on how a § 1983 malicious prosecution claim would proceed under the procedural due process clause of the Fourteenth Amendment or another explicit textual source of the Constitution.

(4) the defendants acted maliciously or for a purpose other than bringing the
    plaintiff to justice.

DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

The verdict slip required the jury to answer the interrogatory:  "Did Arnold Randall prove, by a preponderance of the evidence, that [Officer Reynolds] had "initiated prosecution against [plaintiff] without probable cause in violation of the Fourth Amendment?"  Its affirmative response shows that the jury concluded: (1) Reynolds had initiated a criminal proceeding against plaintiff; and (2) the proceeding had been initiated without probable cause. Although the verdict slip did not include an interrogatory about Reynolds's intent, the evidence at trial, taken in the light most favorable to plaintiff, could support a conclusion that Reynolds initiated the criminal proceeding for a purpose other than bringing the plaintiff to justice.  Three of the five elements necessary to show malicious prosecution under the Fourth Amendment have been satisfied by plaintiff.  But plaintiff must also show: (1) a "seizure" under the Fourth Amendment; and (2) a criminal proceeding ending in plaintiff's favor.

Fourth Amendment "seizure" does not encompass post-conviction incarceration but may, in some circumstances, apply to incarceration during the period "between arrest and pretrial detention."  Torres, 163 F.3d at 174; but see DiBella, 407 F.3d at 601 ("Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure.").  Reynolds argues plaintiff has not established a constitutional violation because, by the time Reynolds recommended criminal charges to the district attorney, plaintiff was already in pretrial detention and was no longer the subject of a Fourth Amendment seizure.

11

It is not clear that the law requires the seizure still to be occurring at the time the criminal proceeding is initiated; it is also unclear when seizure ends and pretrial detention begins.  United States v. Johnstone, 107 F.3d 200, 206-07 (3d Cir. 1997) ("Where the seizure ends and pre-trial detention begins is a difficult question.").  Even if the law were clear on this temporal distinction, the evidence at trial did not make clear when plaintiff was taken into custody or when Reynolds submitted plaintiff's arrest report to the district attorney.  Finally, regardless of when plaintiff's pretrial detention began, legally or factually, the evidence at trial makes clear that, at least from the time he was handcuffed at his house to the time he was admitted into CFCF, plaintiff was "seized" under the Fourth Amendment.  See 6/27/05 Trial Tr. 139-148.  The length of plaintiff's seizure may be relevant to damages, but is irrelevant to step one of the qualified immunity analysis; plaintiff has shown a Fourth Amendment seizure.

Plaintiff has satisfied four of the five elements required to constitute a malicious prosecution Fourth Amendment violation.  The remaining issue is whether plaintiff has shown the criminal proceeding ended in his favor.  The entry of *nolle prosequi* can be sufficient to show that the criminal proceeding ended in plaintiff's favor, provided there is no evidence that plaintiff is not "innocent of the crime charged in the underlying prosecution."  Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002).  Not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably.  Donahue, 280 F.3d at 383.  "A *nol pros* signifies termination of charges in favor of the accused *'only when their final disposition is such as to indicate the innocence of the accused*.'"  Donahue, 280 F.3d at 383 (quoting the Restatement

(Second) of Torts § 660 cmt. a (1976)) (emphasis in original).[11]  Even if the plaintiff in malicious

prosecution can show that the defendant acted maliciously and without probable cause in

instituting prosecution, the defendant will not be liable if the malicious prosecution suit itself

shows plaintiff was in fact guilty of the offense with which he was charged.  Hector, 235 F.3d at

156; W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts 888

(5th ed. 1984) (citing Restatement (Second) of Torts § 657).

The police department arrest report, prepared by Reynolds, recommended charges for

alleged violations of:

(1) Uniform Firearms Act ("UFA"), 18 Pa.C.S. § 6106 (carrying firearm
without a license);

(2) UFA, 18 Pa.C.S. § 6108 (unauthorized carrying of firearm in public place
in Philadelphia);

(3) Controlled Substance, Drug, Device and Cosmetic Act ("CSA"), 35 P.S. §
780-113(a)(16) (knowing or intentional possession of illegal controlled
substance);

(4) CSA, 35 P.S. § 780-113(a)(30) (manufacture, delivery or possession with
intent to deliver illegal controlled substance);

(5) CSA, 35 P.S. § 780-113(a)(31) (possession of small amount of marijuana
not for sale); and

(6) CSA, 35 P.S. § 780-113(a)(32) (possession of paraphernalia for use with
illegal controlled substance).

Pl.'s Trial Ex. 2 at 2.  The district attorney eliminated both UFA charges recommended by

Reynolds, adopted the four recommended CSA charges, and added charges for the following

---

[11]     Because of the close relation between § 1983 and tort liability, the common law of
torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the
appropriate starting point for inquiry under § 1983 as well."  Hector, 235 F.3d at 155.

alleged violations:

>    (1) UFA, 18 Pa.C.S. § 6105 (possession of firearm by former convict);
>
>    (2) CSA, 35 P.S. § 780-113(a)(30) (conspiracy to manufacture, deliver or possess with intent to deliver illegal controlled substance); and
>
>    (3) 18 Pa.C.S. § 907 (possession of instrument of a crime).

Pl.'s Trial Ex. 8 (state court criminal complaint) at 1.  The evidence presented at trial does not negate plaintiff's innocence on the firearms or marijuana charges.  See, e.g. 6/27/05 Trial Tr. at 134-39.  The trial evidence was equivocal regarding plaintiff's innocence on drug distribution and possession of an instrument of a crime.  Id.  But the trial evidence clearly negated plaintiff's innocence on simple drug possession and possession of drug paraphernalia, both of which charges were recommended by Reynolds and adopted by the district attorney.

Title 35 P.S. § 780-113(a)(16) prohibits:

>    Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

Cocaine and cocaine base are defined as illegal controlled substances under the CSA.  See 35 P.S. 780-104.  35 P.S. § 780-113(a)(32) prohibits (emphasis added):

>    The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, *ingesting, inhaling or otherwise introducing into the human* body a controlled substance in violation of this act.

Plaintiff admitted that at the time of the police raid, he had possessed drug paraphernalia, including a glass crack pipe and a plate with cocaine residue, used to ingest crack cocaine.  On

direct examination, plaintiff testified:

**Q.  Now, at some point they [the police] searched the house, correct?**
A.  Yes, they did.
* * *
**Q.  And did they go upstairs?  Do you have a second floor?**
A.  Yes, they did.
* * *
**Q.  Did you see anything in the hands of the police when they came down the stairs?**
A.  Not the first one, but the second cop.
**Q.  Okay.  What did you see?**
A.  He had a plate in his hand and some bullets.
**Q.  Okay, did he have anything else?**
A.  I guess he had the vials, but I really couldn't see them.
**Q.  Okay.**
A.  A pipe.
* * *
**Q.  Now, Mr. Randall, was there a claim that they found these items in your room, did any officer say that?**
A.  Well, both of them, both of them really said it, that's what they said, they found them there.
* * *
**Q.  Now, there's also a claim that there was a bag of new and unused vials – and you know what vials are, right?**
A.  Yes, I do.
* * *
**Q.  Now, they said they also found a plate with residue; what was that?**
A.  Well, I used to smoke crack for a couple years.
**Q.  How long did you do that?**
* * *
A.  For a couple years.
* * *
A.  I smoked crack for a couple years.
**Q.  And had you used that prior to your arrest?**
A.  Yes, I had.
**Q.  Did you use that plate to facilitate your personal use?**
A.  Yes, I did.
**Q.  Okay.  Do you know if there was a pipe confiscated or anything?  Okay.**
A.  It should have been, a glass pipe, yeah.
**Q.  Okay.  And that is to smoke crack cocaine?**
A.  Yes, it is.

15

6/27/05 Trial Tr. at 134-39.[12]

Plaintiff's testimony is evidence of lack of innocence on two charges Reynolds had recommended and the district attorney had adopted: (1) knowing or intentional possession of cocaine, in violation of 35 P.S. § 780-113(a)(16); and (2) possession of drug paraphernalia for the purpose of ingesting cocaine, in violation of 35 P.S. § 780-113(a)(32). The entry of *nolle prosequi*[13] may terminate criminal proceedings in plaintiff's favor, unless there is evidence that plaintiff is not "innocent of the crime charged in the underlying prosecution." Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002). Plaintiff admitted committing two of the crimes with which he

---

[12]     Plaintiff testified similarly during cross examination:

**Q.     Mr. Randall, at the time that the search warrant was executed in June, on June 11th of '03, you were living at 614 North Union Street?**
A.     Yes, I was.
**Q.     Okay. Did you at the time that – and I wasn't sure that I heard when you were testifying earlier – at the time that the police were in your house was there in fact a plate with cocaine residue on it that you had used?**
A.     Yes, there was.
**Q.     Okay. And there were also these vials, the empty vials?**
A.     Yes, there was.
**Q.     Okay. Now, you said you had found those in the school yard, is that right?**
A.     Yes, I had.
**Q.     And the ammunition you found somewhere else, right?**
A.     Yes, I did, mm-hmm.
**Q.     But the cocaine on the plate was yours, is that correct?**
A.     Yes, it was.
**Q.     Okay. And you had mentioned, I think, a pipe, a glass pipe to smoke crack cocaine?**
A.     Yes, there was one.
**Q.     And if that was seized from there, that was yours as well, correct?**
A.     Right, mm-hmm.

6/27/05 Trial Tr. at 151-52.

[13]     The criminal charges against plaintiff were dropped for lack of prosecution, not for lack of evidence. See 6/28/05 Trial Tr. at 67-68.

16

was charged; he has failed to show the criminal proceedings he alleged were maliciously initiated against him without probable cause "ended in [his] favor." <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005); <u>see also</u> <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir. 2000).

For at least two of the seven crimes with which he was charged, plaintiff has not shown an element necessary to prove that Reynolds maliciously prosecuted him under the Fourth Amendment. Because Reynolds is immune from liability for these two charges, Reynolds is not liable for the other five charges. <u>See</u> <u>Wright v. City of Phila.</u>, 409 F.3d 595, 604 (3d Cir. 2005) (where police officer defendants were shown to have had probable cause to arrest plaintiff for *one* charge only, officers were entitled to qualified immunity for allegedly falsely arresting and maliciously prosecuting plaintiff on *all* charges). No constitutional right was violated, so Officer Reynolds is entitled to qualified immunity on the malicious prosecution claim, notwithstanding the jury's verdict. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001); <u>see also</u> <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2001).

**III.    Conclusion**

The court finds that the evidence presented at trial establishes that Officer Reynolds's conduct did not violate plaintiff's constitutional rights. Reynolds is therefore entitled to qualified immunity on plaintiff's malicious prosecution claim, notwithstanding the jury's verdict. An appropriate order follows.

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| ARNOLD RANDALL | : | CIVIL ACTION |
|---|---|---|
| | : | |
| **v.** | : | |
| | : | |
| BRIAN REYNOLDS, | : | |
| REGINALD GRAHAM and | : | |
| CITY OF PHILADELPHIA | : | NO.  04-1081 |

**ORDER**

**AND NOW**, this 25th day of September, 2006, upon consideration of defendant Brian Reynolds's proposed findings of fact and conclusions of law on qualified immunity, after a hearing and oral argument at which counsel for all parties were heard, for the reasons stated in the accompanying memorandum, it is **ORDERED**:

1.      This action is **REMOVED FROM SUSPENSE**.

2.      Officer Reynolds is **GRANTED QUALIFIED IMMUNITY** on plaintiff's malicious prosecution claim notwithstanding the jury's June 30, 2005 verdict.

3.      **JUDGMENT** is entered for defendants Brian Reynolds, Reginald Graham, and the City of Philadelphia.

4.      The clerk is directed to mark this case **CLOSED**.

/s/ Norma L. Shapiro
Norma L. Shapiro, S.J.